IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 1, 2012 Session

# AMBER BRAZILIAN EXPORT RESOURCES, INC., DBA AMBER INTERNATIONAL v. CROWN LABORATORIES, INC. ET AL.

**Appeal from the Chancery Court for Washington County**
**No. 40047     G. Richard Johnson, Chancellor**

---

**No. E2011-01616-COA-R3-CV-FILED-MARCH 21, 2012**

---

Amber Brazilian Export Resources, Inc., doing business as Amber International ("the Plaintiff"), filed this action against Crown Laboratories, Inc. and Jeffrey A. Bedard (collectively "the Defendants") to collect a debt owed on an "open account." The liability of Mr. Bedard is based upon a personal guaranty of Crown's obligation. The Defendants admit that something is owed on the account but deny the amount and further deny that Mr. Bedard signed the guaranty in a personal capacity. The Plaintiff filed a motion for summary judgment supported by the affidavit of its president, which the Defendants opposed with the affidavit of Mr. Bedard in which he states that he signed the guaranty in a representative capacity. He also disputes the amount due as stated in the Plaintiff's affidavit. The trial court granted the Plaintiff's motion. The Defendants appeal. We affirm that part of the judgment holding Mr. Bedard liable on the guaranty and vacate that part of the judgment setting the amount owed because there is a genuine issue of material fact as to the amount.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part and Vacated in Part; Case Remanded**

CHARLES D. SUSANO, JR., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Arthur M. Fowler and Arthur M. Fowler, III, Johnson City, Tennessee, for the appellants, Crown Laboratories, Inc. and Jeffrey A. Bedard.

Thomas R. Banks, Elizabethton, Tennessee, for the appellee, Amber Brazilian Export Resources, Inc., dba Amber International.

# OPINION

## I.

The complaint alleges that Crown "is indebted to the Plaintiff in the amount of $124,778.94 for purchases made on open account" plus "interest from December 11, 2007 at the contract rate of 18% annually." It also alleges that "Defendant Jeffrey A. Bedard executed an Unlimited Guaranty . . . guaranteeing all sums due to the Plaintiff from Defendant Crown Laboratories, Inc." The Plaintiff attached to the complaint copies of the guaranty and all invoices along with the affidavit of its president stating that "after allowing all just credits and set-offs, there is justly due and unpaid thereon the amount of $124,778.94."

We have reproduced the guaranty in its entirety:

**UNLIMITED GUARANTY**

FOR GOOD AND VALUABLE CONSIDERATION, and as an inducement for Amber International (Company) to extend credit to Del Ray Dermatologicals, a division of Crown Laboratories, Inc. (Borrower), the undersigned jointly and severally and unconditionally guarantees to Company the prompt and full payment of all sums now, or hereinafter, due Company from Borrower.

AND, the undersigned agrees to remain fully bound on this guaranty notwithstanding any extension, forbearance, waiver or release, discharge, or substitution of any collateral or security for the debt. In the event of default, the Company may seek payment directly from the undersigned without need to proceed first against the Borrower.

This guaranty shall be binding upon, and inure to the benefit of the parties, their successors, assigns, and personal representatives.

Signed this 4th day of December 2007.

Borrower

The Defendants filed an answer denying the paragraph of the complaint in which the amount owed is stated. It also denied the paragraph stating that the "Defendants are not entitled to any credit or further set-off."

As previously noted, the Plaintiff filed a motion for summary judgment supported by a statement of undisputed facts and the affidavit of its president, the same individual who

filed the affidavit attached to the complaint. The affidavit states that Bedard executed an unlimited guaranty of all sums due and that the amount owed is $124,778.94 plus interest at the rate of 1.5% per month. The starting date of the accrual of interest is not specified.

The Defendants responded with their own statement of facts which was based on the attached affidavit of Mr. Bedard. In pertinent part, the Defendants stated:

> On January 13, 2009, the Plaintiff agreed with the Defendant that the principal owed by Defendant to Plaintiff was $118,000.00 with the cumulative finance charges through January 12, 2009, of $15,000.00 for a total due on January 12, 2009 of $133,000.00.

> On the outstanding balance Defendant has paid $51,812.96.

> Jeffrey A. Bedard was not a guarantor as he did not sign a document as a guarantor but has only signed documents on behalf of the Defendant.

Bedard attached to his affidavit a series of emails wherein the agreement was allegedly reached.

The trial court entered an order granting summary judgment to the Plaintiff. The part of the order that is pertinent states:

> [The] Plaintiff alleged a total indebtedness of $124,778.94, which was supported by the affidavit of James Krah, President of Amber Brazilian Export Resources, and supporting invoices and corporate records. In opposition, the Defendants, by the affidavit of Jeffrey Bedard, denied the amount of the debt, claiming they had made partial payment, but supplied no supporting documentation as evidence of payment. The Court further Finds that the unlimited guaranty signed by Jeffrey Bedard was signed by him individually, and not as a corporate officer, based upon an examination of the four corners of the document.

The court held the Defendants liable for a principal debt of $124,778.94,

plus finance charges up to January 6, 2009, in the amount of $19,771.60, . . . with finance charges continuing to accrue on the principal balance of $124,778.94 at the rate of 1.5% per month from January 6, 2009, to and through June 1, 2011 in the amount of $53,904.50, for a total accrued finance charge amount of $73,676.10.

The Defendants appeal.

## II.

The issues, as rephrased slightly, are:

Whether the trial court erred in granting summary judgment in light of the affidavit of Bedard.[1]

Whether the trial court erred in holding Bedard liable in his individual capacity on the guaranty.

## III.

All the issues presented are reviewed under a de novo standard of review with no presumption of correctness:

Because the resolution of a motion for summary judgment is a matter of law, we review the trial court's judgment de novo with no presumption of correctness. In addition, we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party.

*Martin v. Norfolk Southern Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008)(citations omitted). Further, "[t]he interpretation of a contract is a matter of law, which we review de novo with no presumption of correctness." *84 Lumber Co. v. Smith*, 356 S.W.3d 380, 383 (Tenn. 2011).

---

[1]The Defendants concede that Crown is liable on the open account.

IV.

We begin with the issue of the guaranty. The outcome is governed by the Supreme Court's decision in **84 Lumber**, although neither party cites the case. In **84 Lumber**, the guarantor had signed a commercial credit application asking 84 Lumber Company to extend credit to Allstates Building Systems, LLC. He "signed the application as 'R. Bryan Smith, President.' " **Id**. at 382. Immediately above his signature line, the application contained the following language:

> BY SIGNING BELOW . . . I DO UNCONDITIONALLY AND IRREVOCABLY PERSONALLY GUARANTEE THIS CREDIT ACCOUNT AND PAYMENTS OF ANY AND ALL AMOUNTS DUE BY THE ABOVE BUSINESS . . . .

**Id**. at 381-82 (capitalization in original). The High Court held that the determinative issue was the intent of the parties as reflected by the language of the document. **Id**. The Court held that, even though Mr. Smith signed as president, which would normally indicate an intent to sign in a representative capacity, the language in the body of the document "demonstrate[s] that the parties intended that the individual who signed the contract agreed to be personally responsible for amounts owed on the contract." **Id**. at 383. The focus of the Court's discussion was on the language of the contract that made it clear that the pronoun "I" referred to the guarantor in an individual capacity and that the reference to the "above business" referred to Allstates, as the applicant for credit. **Id**. at 383. The Court held that by signing the document Mr. Smith was presumed to have read and understood it, including that part guaranteeing the debt of the applicant.

The same principles apply in the present case. The Defendants' argument that Mr. Bedard was signing on behalf of the "Borrower" makes no sense in light of the plain language in the body of the document. It clearly states that "the undersigned . . . guarantees . . . the prompt and full payment of all sums now, or hereinafter, due . . . from Borrower." It also states that in the event of default the Plaintiff may collect directly from the guarantor "without need to proceed first against the Borrower." The Defendants, in effect, ask us to hold that the Plaintiff intended for Crown to guarantee its own debt. To accept this argument would be to render the guaranty of no effect. The only logical interpretation of the language of the document is that Bedard was signing as guarantor of the obligation of the "Borrower." We hold that the trial court did not err in finding that Bedard is personally liable on the guaranty as a matter of law.

We next consider the issue of whether the trial court erred in granting summary judgment in light of the statements in Mr. Bedard's affidavit. The trial court, in its order

granting summary judgment, made no mention of Mr. Bedard's verified assertion that the parties reached an agreement that the principal amount of the debt as of January 13, 2009 was $118,000. Obviously, the order did not credit Mr. Bedard's affidavit because it concluded that the principal amount owed as of January 6, 2009 was $124,778.94, not including accrued finance charges of $19,771.60 as of January 6, 2009. This is in violation of the rule that in considering a motion for summary judgment, the opponent's evidence must be accepted as true and the proponent's evidence that has been countered must be counted for naught. ***Giggers v. Memphis Housing Authority***, 277 S.W.3d 359, 364 (Tenn. 2009). As to Mr. Bedard's assertion in his affidavit that payments of $51,812.96 were made after January 13, 2009, the court swept it aside for lack of documentation. The trial court did not explain in its order, and neither does the Plaintiff explain on appeal, why the lack of documentation would render Mr. Bedard's testimony inadmissible. In the absence of any such explanation, we must conclude that the court treated the evidence as admissible but entitled to little if any weight. The lack of documentation may well go to the weight that should be given to Mr. Bedard's testimony when presented at trial, but weighing of the evidence is not permitted at the summary judgment stage of the proceedings. ***Martin***, 271 S.W.3d at 87. Thus, we conclude that there is a genuine issue of material fact concerning the amount owed.

The Plaintiff argues that any payments on the account would constitute an affirmative defense and that the Defendants waived any and all affirmative defenses by not raising any defenses in their answer. *See **George v. Building Materials Corp**.*, 44 S.W.3d 481, 486-87 (Tenn. 2001)( failure to plead affirmative defense can result in waiver). While it is true that failure to raise an affirmative defense can result in a waiver, the key question is generally whether the opposing party had sufficient notice of the defense to attempt to rebut it. ***Id***. at 487. The complaint alleges that the debt is the result of an open account. Attachments to the complain reflect payments. The answer admits that purchases were made but, in essence, denies that the amount alleged is correctly stated. The answer also specifically denies that the Defendants have been given the benefit of all "credit or . . . set-off." The issue of payment came up in opposition to the motion for summary judgment. There is no indication in the record that the Plaintiff asked to take Mr. Bedard's deposition, or requested documentation regarding the alleged payments or asked to reschedule the hearing. They had the option to do all these things if they were surprised by Mr. Bedard's assertion of payments made. *See*, *e.g*, Tenn. R. Civ. P. 56.06 & 07. In fact, there is no indication in the record before us in this case that the Plaintiff replied to the Defendants' response to the motion for summary judgment in any manner so as to argue to the trial court that the Defendants waived the defense of payment. In summary, we find no merit in the Plaintiff's argument that the Defendants waived the issue of payment by failing to assert it by name in their answer. We believe that the substance of the answer put the Plaintiff on notice that the Defendants disputed they had been given credit for all their payments, and the Plaintiff has not shown

that it did not have the opportunity in the context of the summary judgment motion to rebut the Defendants' assertion of payments made.

V.

The judgment of the trial court is affirmed in part and vacated in part. That part of the judgment holding Jeffrey A. Bedard personally liable for any amount owed by Crown Laboratories, Inc. is affirmed. That part of the judgment setting the amount of the debt is vacated because there is a genuine dispute of material fact as to the amount owed. Costs on appeal are taxed one half to the appellee, Amber Brazilian Export Resources, Inc., dba Amber International, and one half to the appellants, Crown Laboratories, Inc., and Jeffrey A. Bedard. This matter is remanded, pursuant to applicable law, for further proceedings as to the issue of the amount owed.

_____
CHARLES D. SUSANO, JR., JUDGE