# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### March 26, 2014 Session

## JAY WILFONG v. CRK REAL ESTATE, LLC, ET AL.

**Appeal from the Chancery Court for Wilson County**
**No. 08260      Charles K. Smith, Judge**

---

**No. M2013-00188-COA-R3-CV - Filed June 17, 2014**

---

This case arose out of a contract for the sale of real estate. The contract included a provision requiring the buyer to make "commercially reasonable efforts" to sell the property, and to split any profits with the seller if the property was resold within 36 months. The buyer did not sell the property, and the seller brought suit, raising numerous claims, including breach of contract, breach of fiduciary duty, violations of the  Real Estate Settlement Practices Act (RESPA), the Truth in Lending Act (TILA), the Fair Debt Collection Practice Act, the Consumer Protection Act, RICO, wrongful foreclosure, promissory fraud, civil conspiracy, collusion, intentional infliction of emotional distress, constructive trust, conversion and unjust enrichment.  After a hearing, the trial court granted the buyer's motion to dismiss thirteen of the seller's claims, denied the motion to dismiss another six of his claims, and certified its order as final for the purposes of appeal under Tenn. R. Civ. P. 54.02. We affirm the trial court.

**Tenn. R. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

DON R. ASH, SR. J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Jay Wilfong, Mt. Juliet, Tennessee, Pro Se.

T. Price Thompson III, Lebanon, Tennessee; Sanford L. Michelman, Todd H. Stitt, Marc R. Jacobs, Encino, California, for the appellee(s), CRK Real Estate, LLC, RM Wilson County Investors, LLC, Hamid Mashhoon, Mondana Mashhoon Gordon, Mahasti Mashhoon, and The Mashhoon Family Inter Vivos Trust Dated May 4, 1997;

W. Andrew Bobo, M. Wyatt Burk, Shelbyville, Tennessee, for the appellee, Traders

1

Bank;

Timothy L. Warnock, Timothy G. Harvey, Nashville, Tennessee, for the appellee, Carol Perrin;

John S. Hicks, Nashville, Tennessee; Sonya Smith Wright, Murfreesboro, Tennessee, for the appellees, Charles R. Kaelin and Marcus French.

## OPINION

### I. A REAL ESTATE SALES CONTRACT

This case followed a long and convoluted course in the trial court, with the plaintiff bringing numerous claims under different theories of recovery against a number of different defendants. All the claims stemmed from a single contract for the sale of real estate, and the issues on appeal are mostly procedural in nature. Before examining those issues, however, we must first discuss the transaction from which the case arose.

In 2005, Jay Wilfong entered into a contract to sell a ten acre tract of property on Beckwith Road in Mt. Juliet to CRK Real Estate, LLC for a price of $1.06 million ("The Contract of Sale"). The property was subject to a pre-existing $59,000 mortgage held by Traders National Bank. The financial terms of the sales contract required CRK to pay Wilfong $140,000 upon the closing, and to execute a Deed of Trust note for the remainder, "payable at the rate of zero percent (0%) interest," with the note to be retired at the end of four years by a balloon payment.

Another provision made a portion of the principal on the note, $115,000, payable "within five business days of the letting of bids by the State of Tennessee for the construction of an interchange at Interstate 40 and Beckwith Road, Wilson County, Tennessee and Purchaser's refinancing of it and other surrounding property."

Section 9.14 of the sales contract, which is central to Mr. Wilfong's claims, gave him the possibility of realizing a greater return on the sale. The section reads, in relevant part,

> Seller and Purchaser agree that for a period of thirty-six (36) months
> following the Closing Purchaser shall, using commercially reasonable
> efforts, seek to resell the Property either singularly or in conjunction with
> Purchaser's other surrounding properties as Purchaser shall in its sole

2

judgment determine. . . If Seller is able to sell the Property within thirty-six (36) months of the closing date, Purchaser shall at the time of the resale of the Property pay Seller fifty percent (50%) of the resale price applicable to the property less $1,060,000, all costs of resale and closing costs so that the profit split shall be the net proceeds after deduction of all costs of sale and closing.

Section 9.14 further provided CRK would not "transfer, convey, or sell the Property to any affiliated person or entity without the prior written consent of Seller . . ." According to Mr. Wilfong's complaints, however, CRK did not make any serious attempt to sell the property in the three years following the execution of the contract, but instead made plans to develop the land itself, together with adjoining property CRK owned.

## II. COMPLAINTS AND MOTIONS

On June 9, 2008, Mr. Wilfong filed the first of a number of pleadings in this matter, a fairly brief complaint against CRK for declaratory judgment and for damages in the Chancery Court of Wilson County. He claimed he sold the land for less than it was worth and he gave CRK very lenient financing terms because the potential profit from its sale was part of the bargained-for consideration. He also contended CRK violated the contract by failing to make any serious attempt to sell the property in the three years following the execution of the contract, but instead made plans to develop the land itself.

On July 14, 2010, Mr. Wilfong amended his complaint. He alleged CRK had effectively transferred the property to an "affiliated entity," a family-owned California development company, in such a way as to avoid the trigger of an actual sale which would require sharing the profit. His complaint named the California developer and its individual members as additional defendants, as well as other individuals and real estate development companies connected with CRK in Tennessee.[1] Mr. Wilfong also asserted CRK had failed to pay him the $115,000 he was entitled to under the contract of sale after the City of Mt. Juliet awarded construction contracts on the Beckwith Road interchange, and, as a result, he had to sell several other properties he owned at a discounted price in order to generate needed cash.

On March 26, 2012, Mr. Wilfong filed a seventy page "Second Amended Complaint." This second amended complaint named still more defendants as well as

[1]Mr. Wilfong asserts, at the time of sale, the sole owner of CRK Real Estate LLC was defendant Charles R. Kaelin, but the number of defendants increased because of repeated changes to the ownership of the corporation and of its assets during the course of this litigation.

3

"Unnamed Third-Parties that Provided Financing and Conspired with Named Defendants." Traders National Bank was named as a Defendant in Intervention.[2] To avoid confusion, we will hereinafter refer to all the defendants except Traders National Bank as "CRK." The Complaint recited twenty claims against the defendants, including breach of contract, breach of fiduciary duty, violations of the Real Estate Settlement Practices Act (RESPA), the Truth in Lending Act (TILA), the Fair Debt Collection Practice Act, the Consumer Protection Act and RICO, wrongful foreclosure, promissory fraud, civil conspiracy, collusion, intentional infliction of emotional distress, constructive trust and unjust enrichment.

According to the Second Amended Complaint, CRK and its associates continued to conspire against him and to engage in a cover-up to further deny him his rights under the Contract of Sale. Among other things, he alleged CRK had purchased the mortgage on his home and two other notes and attempted to foreclose on them before the balloon payment on the Beckwith Road property became due. Mr. Wilfong asserted he had to file a Chapter 13 bankruptcy to prevent the foreclosure.

On April 25, 2012, CRK filed a motion to dismiss nineteen of the twenty claims in the Second Amended Complaint for failure to state a claim.[3] Traders National Bank filed its own motion to dismiss those claims which were directed against its participation in the alleged schemes of the other defendants. Among other things, the defendants argued Mr. Wilfong's RESPA and TILA claims were barred by the statute of limitations. Four days before the scheduled hearing on the motion to dismiss the Second Amended Complaint, Mr. Wilfong filed a Motion for Leave to File a Third Amended Complaint.

### III. THE TRIAL COURT'S DECISION

On August 10, 2012, the trial court conducted a hearing on CRK's motion to dismiss the Second Amended Complaint without having ruled on the Motion for Leave to File a Third Amended Complaint. After reading the briefs of the parties, the court ruled from the bench. The court granted the motion to dismiss, at least in part, thirteen of the claims in Mr. Wilfong's second amended complaint, and it denied the motion as to six claims. Among the claims the court let stand were those for breach of contract against

---

[2]According to Mr. Wilfong's Second Amended Complaint, CRK Real Estate and all the remaining defendants demanded Traders National Bank be added as an "indispensable party" pursuant to Tenn. R. Civ. P. 19, and the request was granted on March 12, 2012.

[3]The only claim unaddressed by CRK's motion to dismiss was a claim for breach of fiduciary duty against Marcus French. Mr. French had served as Mr. Wilfong's agent, and Mr. Wilfong alleged he deliberately withheld information about CRK's actions from him.

4

CRK and Charles R. Kaelin and claims for civil conspiracy against all the defendants.

The court also declared Mr. Wilfong needed to amend his undismissed claims to better state the damages he had allegedly suffered. At the request of counsel for defendants, the court agreed its rulings on the motion to dismiss could be considered a final order for purposes of appeal under Tenn. R. Civ. P. 54.02. The trial court's rulings were memorialized in an order filed on August 27, 2012.

Two of the court's most important rulings for the purposes of the issues in this appeal, were its grant of the motion to dismiss Mr. Wilfong's claims for violations of the Real Estate Settlement Practices Act (RESPA) and the Truth in Lending Act (TILA) on the basis of the expiration of the three year statute of limitations on those actions. The court also addressed Mr. Wilfong's request to be allowed to file a Third Amended Complaint as follows: "Except as to any Counts, claims, causes of action and requests for declaratory judgment ordered to be dismissed with prejudice above, Plaintiff shall be granted leave to amend Plaintiff's Second Amended Complaint as ordered above."

Mr. Wilfong subsequently filed a Motion to Alter or Amend the trial court's order, which was denied. He also filed a Third Amended Complaint. The complaint included the same claims which previously appeared in his Second Amended Complaint, including some dismissed by the trial court, and specified an amount of damages for each claim, the largest being a $50,000,000 claim for compensatory, statutory, and punitive damages attached to Mr. Wilfong's allegations of fraud and promissory fraud. However, this appeal only involves the issues raised by trial court's ruling on Mr. Wilfong's Second Amended Complaint and his Motion to Alter or Amend.[4]

## IV. ANALYSIS

Mr. Wilfong filed his brief on appeal and presented his oral arguments to this court *pro se.* His brief lists seven different issues on appeal which were initially articulated by his former attorney. Mr. Wilfong announced in his brief and at oral argument he wishes to withdraw four of those issues from this court's consideration, and he asks us to determine the remaining three, which we copy below verbatim, except we have renumbered them to avoid confusion:

---

[4]We have examined Mr. Wilfong's Second Amended Complaint and Third Amended Complaint side-by-side and have found very few differences between them, aside from his specification of the amounts of his damages and the addition of two new allegations against Traders National Bank. Mr. Wilfong alleged the bank was guilty of violating his privacy by disclosing his financial information to CRK, and it did not possess the original notes on his three mortgaged properties.

I.  Did the Trial Court Err in Ruling on the Motion to dismiss the Second Amended Complaint while Plaintiff's Motion for Leave to File Third Amended Complaint was pending;

II.  Did the Trial Court Err in dismissing the Second Amended Complaint's Claims under the Real Estate Settlement Practices (sic) Act and/or Truth in Lending Act;

III.  Did the Trial Court Err in Prohibiting Plaintiff from asserting Additional Claims in his Third Amended Complaint.

We will discuss these issues in the order presented.

**A. Issue I**

The first issue presented is whether the trial court erred in ruling on the Motion to Dismiss the Second Amended Complaint while Plaintiff's Motion for Leave to File Third Amended Complaint was pending.  Under Rule 15.02 Tenn. R. Civ. P., a party may amend its own pleadings once, as a matter of course, any time before a responsive pleading is served. Otherwise, a party may amend its pleadings only by written consent of the adverse party or by leave of the court, "and leave shall be freely given when justice so requires."

Mr. Wilfong filed his motion to be allowed to  file a third amended complaint just four days before the hearing on Defendants' motion to dismiss was scheduled to take place.  Under Rule 6.04 Tenn. R. Civ. P.,  a written motion "shall be served not later than five (5) days before the time specified for the hearing . . ."  Obviously, Mr. Wilfong's motion was out of compliance with the Rules of Civil Procedure.

The trial court does have the discretion to ignore Rule 6.04 in appropriate cases, and Mr. Wilfong's tardiness would not have been sufficient, in and of itself, to serve as a basis for denying the motion to amend, in light of the language in Rule 15.02:  "leave [to amend] shall be freely given when justice so requires."  We note, however, this case had been pending for over four years when Mr. Wilfong filed his motion, and he had been allowed to amend his complaint twice before.

 Further, CRK's motion to dismiss had been pending for almost four months and all the parties had filed detailed memoranda in support of or in opposition to the motion. Because of the complexity of the case and the number of parties involved, numerous attorneys had prepared to appear at the motion hearing, including those who had to come

to court from out of state to represent the California defendants.

If the trial court had granted Mr. Wilfong's motion, the defendants would have had to request a continuance in order to study the newly amended complaint and to meet the allegations in it. *See, Matus v. Metro. Gov't of Nashville,* 128 S.W.3d 653, 656 (Tenn. Ct. App. 2003). Thus, if Mr. Wilfong's late-filed motion had been granted, it would have caused great inconvenience and expense to the parties and resulted in more delay, while not substantially altering the rights of the parties relative to one another.

The determination whether or not to grant a motion to amend a complaint lies within the sound discretion of the trial court. *Burton v. Carroll County*, 60 S.W.3d 821, 832 (Tenn. Ct. App. 2001); *State Dept. of Human Services v. Hauck*, 872 S.W.2d 916, 919 (Tenn. Ct. App. 1993); *Merriman v. Smith,* 599 S.W.2d 548 (Tenn. Ct. App. 1979). A trial court's discretionary ruling on amendments to pleadings will not be disturbed on appeal unless there is a showing of abuse of discretion. *Cumulus Broadcasting, Inc. v. Shim*, 226 S.W.3d 366, 374 (Tenn. 2007); *George v. Building Materials Corp.*, 44 S.W.3d 481, 486 (Tenn. 2001); *Harris v. St. Mary's Medical Ctr., Inc.*, 726 S.W.2d 902, 904 (Tenn. 1987).

In light of the lateness of the filing of Mr. Wilfong's motion, the trial court's grant of two previous motions to amend, the amount of time the case and the motion to dismiss had been pending in the trial court, and the lack of any compelling explanation why a new version of the complaint was needed, we find the trial court did not abuse its discretion in declining to grant the motion to amend the pleading before ruling on defendants' motion to dismiss.

## B. Issue II

Mr. Wilfong's second issue is whether the trial court erred in dismissing the claims he asserted in his Second Amended Complaint under the Real Estate Settlement Practices Act and/or Truth in Lending Act.[5] Congress enacted the Real Estate Settlement Practices Act (RESPA), 12 U.S.C. § 2601, in 1974, to protect those who enter into "federally

---

[5]The Truth in Lending Act (TILA), 15 U.S.C. § 1640 et seq, is broader than RESPA, for it applies to credit transactions other than those involving federally related mortgage loans. However, an action under TILA, must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e); *Russell v. Household Mortgage Servs*., M2008-01703-COA-R3CV, 2012 WL 2054388 (Tenn. Ct. App. June 7, 2012); *Jones v. TransOhio Sav. Ass'n*, 747 F.2d 1037, 1040 (6th Cir. 1984). Because Mr. Wilfong's potential rights and remedies under TILA were no greater than those available to him under RESPA, and because he himself did not suggest there were any meaningful distinctions between the two Acts, we will henceforth only refer to RESPA in our discussion.

related mortgage loans" from abusive practices by mortgage lenders.

In his Second Amended Complaint, Mr. Wilfong asserted RESPA required lenders who intend to secure a mortgage note with the borrower's personal residence to notify the borrower he has a right to rescind the transaction within three days of the execution of the note. He alleged Traders National Bank failed to notify him of his right to rescind when he entered into a mortgage Note and Deed of Trust with the bank on his primary residence on April 23, 2003.

He further alleged the bank failed to notify him of his right to rescind when he entered into mortgage Notes and Deeds of Trust on two other properties on September 7, 2005 and December 5, 2005. Although neither of those properties was his primary residence, Mr. Wilfong contended a subsequent cross-collateralization of the three notes brought them within RESPA's ambit, and he asked the court for a declaratory judgment finding he was entitled to rescind the three notes and for other remedies available under RESPA and TILA.

Mr. Wilfong asserted other violations of RESPA as well. Among the many provisions of the current version of the Act as effective January 16, 2009, is a requirement lenders, who assign or sell a mortgage loan or who transfer the loan servicing, notify borrowers of such assignment, sale or transfer no less than fifteen days before the effective date of the transaction. 12 U.S.C. § 2605(b). Mr. Wilfong alleged CRK purchased the mortgage notes from Traders National Bank on July 18, 2008, without giving him the required notification, and it subsequently cross-collateralized the three loans in order to begin wrongful foreclosure proceedings against him.

The trial court dismissed Mr. Wilfong's RESPA claims because of the passing of the statute of limitations. 12 U.S.C. § 2614 requires a party who brings suit for violation of the disclosure requirements of 12 U.S.C. § 2605 to do so within three years of the date of the violation. The court reasoned the right of rescission only applied to the 2003 mortgage on Mr. Wilfong's primary residence, and not to the mortgages on his two other properties, action on which would be barred in any case because of the statute of limitations. The court also held there could be no right of rescission related to the 2008 purchase of the notes by CRK, because Mr. Wilfong was not a party to the 2008 transaction.

The court did not directly address the question of the failure of Traders National Bank to give Mr. Wilfong the statutorily required notice CRK had purchased the mortgage notes, but simply dismissed all the RESPA claims against all the parties. We note, however, Traders National Bank was not added as party until March 17, 2012, more

8

than three years after CRK purchased the notes.

Mr. Wilfong acknowledges more than three years had passed between the date of the above transactions and his assertion of RESPA claims against the bank, but he argues the trial court should have applied the principal of equitable tolling to extend the statute of limitations. In the context of a defense predicated on a statute of limitations, the doctrine of equitable estoppel tolls the running of the statute of limitations when the defendant has misled the plaintiff into failing to file a lawsuit within the statutory limitations period.[6] The rationale for equitable tolling was articulated by the United States Supreme Court as long ago as the Nineteenth Century:

> [Statutes of limitation] were enacted to prevent frauds; to prevent parties from asserting rights after the lapse of time had destroyed or impaired the evidence which would show that such rights never existed, or had been satisfied, transferred, or extinguished, if they ever did exist. To hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure.

*Bailey v. Glover*, supra, 88 U.S. (21 Wall.) 342, 349 (1874).

Conversely, too liberal an application of equitable tolling would frustrate the legitimate purposes of statutes of limitations. Thus, "[e]quitable tolling is a remedy that must be used sparingly, that is, in extreme cases where failure to invoke the principles of equity would lead to unacceptably unjust outcomes." *Whitehead v. State*, 402 S.W.3d 615, 626 (Tenn. 2013)(citing *Downs v. McNeil*, 520 F.3d 1311, 1318 (11th Cir. 2008)).

The Sixth Circuit Court of Appeals has defined the elements required to establish equitable tolling by the doctrine of fraudulent concealment as follows: (1) defendants must have concealed the conduct constituting the cause of action; (2) defendants' concealment must have prevented the plaintiffs from discovering the cause of action within the limitations period; and (3) until discovery, the plaintiffs must have exercised due diligence in trying to find out about the cause of action. *Egerer v. Woodland Realty,*

---

[6]Unlike other state courts and the federal courts, our Tennessee courts have declined to recognize the doctrine of equitable tolling in civil cases. *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 460 (Tenn. 2012) (citing *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d at 145 n. 2; *Norton v. Everhart*, 895 S.W.2d 317, 321 (Tenn. 1995)). Since, however, RESPA is a federal statute, we are not prevented by Tennessee law from considering the equitable tolling defense.

*Inc.,* 556 F.3d 415, 422 (6th Cir. 2009).

Mr. Wilfong is an experienced businessman who was already aware CRK was an untrustworthy partner as early as 2008 when he filed his first complaint. He does not allege he took any steps to ascertain the status of the loan against the property which was the subject of the contract at the heart of the complaint. Further, Mr. Wilfong did not explain exactly how the alleged failure to disclose the transfer of the three notes injured him. In short, we do not believe his RESPA claim falls within the class of extreme cases theat would justify the use of the remedy of equitable tolling. We therefore conclude the trial court was correct to dismiss all of Mr. Wilfong's RESPA claims. Of course, our conclusion does not prevent Mr. Wilfong from alleging CRK's actions in regard to the notes were wrongful, or to use those allegations to support any of his remaining claims for which they may be relevant, such as his claims for wrongful foreclosure, fraud, and civil conspiracy.

## C. Issue III

The third issue Mr. Wilfong recited in his brief was whether the trial court erred in prohibiting him from asserting additional claims in his third amended complaint. However, Mr. Wilfong did include additional claims in his third amended complaint, and he acknowledged doing so during oral argument. Further, there is nothing in the record to suggest Mr. Wilfong could not amend his complaint again if further discovery discloses the existence of new claims and if the trial court grants his motion amend. Thus, Mr. Wilfong's appeal of this issue is moot.

## V.

The order of the trial court is affirmed. We remand this case to the Chancery Court of Wilson County for any further proceedings necessary, including a determination of Mr. Wilfong's unadjudicated claims. Tax the costs on appeal to the appellant, Jay Wilfong.

_____
DON R. ASH, SR. JUDGE

10