# IN THE SUPREME COURT OF TENNESSEE
# AT NASHVILLE
## October 4, 2000 Session

## BOBBY R. GEORGE v. BUILDING MATERIALS CORPORATION OF AMERICA, ET AL.

**Appeal by Permission from the**
**Supreme Court Special Workers' Compensation Appeals Panel**
**Circuit Court for Davidson County**
**No. 98C-351     Carol Solomon, Judge**

---

### No. M1999-00449-SC-WCM-CV - Filed May 2, 2001

---

In this workers' compensation case, the trial court awarded Bobby R. George 90% permanent partial disability for loss of hearing in both ears. Mr. George's employer, Building Materials Corporation of America d/b/a GAF Materials Corporation ("GAF"), filed a post-judgment motion for leave to amend its answer to allege a statute of limitations defense. The trial court denied the motion. The Special Workers' Compensation Appeals Panel ("the Panel") reversed the trial court's denial of the motion to amend the answer and remanded the case for further proceedings on the statute of limitations defense. The Panel also reduced the award to 50% permanent partial disability should the statute of limitations defense be unsuccessful on remand. We disagree with the Panel's recommendation and affirm the trial court's judgment in all respects.

**Tenn. Code Ann. § 50-6-225(e); Findings of Fact and Conclusions of Law by the Special Workers' Compensation Appeals Panel Rejected; Judgment of the Trial Court Affirmed.**

JANICE M. HOLDER, J., delivered the opinion of the court, in which E. RILEY ANDERSON, C.J., and FRANK F. DROWOTA, III and WILLIAM M. BARKER, JJ., joined. ADOLPHO A. BIRCH, JR., not participating.

Ann Buntin Steiner, Nashville, Tennessee, for plaintiff-appellant, Bobby R. George.

James H. Tucker, Jr., Nashville, Tennessee, for defendant-appellee, Building Material Corporation of America, and for defendant, Zurich Insurance Company.

## OPINION

## BACKGROUND

Mr. George was sixty-two years old at the time of trial on November 23, 1998. He graduated from high school in 1955 and completed a one-year degree in Industrial Management at the University of Tennessee in Nashville in 1968. After graduating from high school, Mr. George served in the Army for three years. He then began working for Caterpillar Tractor Company as a burr bench operator. Beginning in 1960, Mr. George worked at a Nashville fiberglass plant, under multiple ownerships, for thirty-eight years. Between 1960 and 1985, Mr. George worked as a roving machine operator, a production foreman, and a process engineer. After GAF purchased the plant in 1985, Mr. George was employed as a shift supervisor in the forming room and as a supervisor over operators in other departments.

Both Mr. George and GAF were aware that the noise in some areas of the plant reached levels above one hundred decibels. Mr. George testified that the noise level in the area in which he worked was approximately ninety decibels, a level he knew to be above the OSHA limit. Until 1986, however, Mr. George did not wear ear protection while working. In that year GAF began providing hearing tests for its employees. Test results were provided both to GAF and to each employee who was tested. Mr. George was tested nine times between 1987 and 1997. Each test indicated a loss of hearing in both ears and a severe loss of hearing of high-pitched sounds in the right ear beginning in 1990. The results of the last test on December 4, 1997, also showed a mild hearing loss in both ears for voices and other everyday sounds.

In 1992, GAF referred Mr. George to Dr. Clyde Alley, a hearing specialist, to perform a hearing test. Dr. Alley concluded that hearing aids might help Mr. George's condition but suggested no additional treatment. Dr. Ronald C. Cate, M.D., a board-certified specialist in otolaryngology, conducted a physical examination and an audiogram of Mr. George on November 14, 1997. Dr. Cate diagnosed Mr. George as having a sensorineural hearing loss in both ears. Dr. Cate opined that the noise level in the GAF plant most likely aggravated Mr. George's hearing condition, causing it to worsen. Although Mr. George might benefit from the use of a hearing aid, Dr. Cate concluded that no surgery or other treatment was available to improve Mr. George's condition. Dr. Cate assessed Mr. George's hearing loss based upon the AMA Guidelines at 7.5% in the right ear, 13.1% in the left ear, and 8.4% in both ears.

Dr. David S. Haynes, M.D., an ear, nose, and throat doctor specializing in neurotology (hearing imbalance disorder), saw Mr. George on May 7, 1998. Dr. Haynes performed a physical examination and hearing test. The results showed that Mr. George had a bilateral hearing loss that was worse in his right ear. Using the AMA Guidelines, Dr. Haynes rated Mr. George with 17% impairment to his right ear, 19% impairment to his left ear, and 17% impairment to both ears. Dr. Haynes testified that the overall impairment rating would be 17.2%. Assuming that Dr. Cate's test results were valid, Dr. Haynes stated that Mr. George appeared to have a progressive hearing loss. Dr. Haynes concluded that this loss was caused in part by aging and by exposure to loud noise during

his military term and hunting trips. In Dr. Haynes' opinion, however, the most likely cause of Mr. George's hearing loss was his noisy work environment. Dr. Haynes testified that he would recommend future medical treatment for Mr. George in the form of hearing aids for both ears, an MRI scan, and frequent audiologic testing, with adjustments to the hearing aids as needed.

Mr. George testified that his hearing capacity in an industrial setting is diminished. To understand a conversation in an environment with loud background noise he must look directly at the person speaking to him. Mr. George's wife testified that his hearing has worsened. He cannot hear her speaking to him if his back is turned to her or if there is background noise such as a TV or radio. Mr. George's son corroborated this testimony. Mr. George testified, however, that he is able to hear without difficulty in an environment with a normal level of background noise. For example, he had no difficulty hearing the questions asked of him during his deposition.

Mr. George testified that he was exposed to loud noise during his service in the military. He estimated, however, that this exposure would have occurred during less than 5% of his military service and that he noticed no hearing loss after he left the military. Mr. George also testified that he was exposed to loud noise when hunting or using a chainsaw at home. He wears ear protection when he hunts approximately two times per year.

After a three-day hiatus in his employment, GAF asked Mr. George to relocate to the GAF plant in South Korea. He worked in South Korea from February to April, 1998, returning to his position in the Nashville plant for only a short time before being laid off at the beginning of June 1998. Mr. George testified that he never missed any work due to his injury. He speculated that his hearing was a factor in his discharge. After leaving GAF, Mr. George did not seek other employment.

The trial court found that Mr. George had sustained 90% permanent partial disability to both ears based upon his advancing age, limited education, length of employment, and lack of broad-based skills. The trial court ruled that GAF had waived its statute of limitations defense, raised for the first time in GAF's pre-trial brief, for failure to timely raise the issue. The trial court subsequently denied GAF's post-trial motion to amend its answer to include a statute of limitations defense. The trial court held that GAF had actual notice of Mr. George's injury through the hearing test results provided to both GAF and Mr. George.

GAF appealed, alleging that Mr. George's claim was barred by the statute of limitations and for failure to give timely notice. GAF also argued that the evidence preponderates against an award of 90% permanent partial disability. The appeal was referred to the Special Workers' Compensation Appeals Panel ("the Panel") pursuant to Tenn. Code Ann. § 50-6-225(e)(3). The Panel agreed with the trial court's finding that GAF received actual notice of Mr. George's injury.[1] It held, however,

---

[1] We agree with the Panel's holding that GAF had actual notice of Mr. George's claim. Tenn. Code Ann. § 50-6-201 provides an exception to the thirty-day notice requirement if the employer has actual notice of the injury.

(continued...)

that the trial court erred in not permitting GAF to amend its answer to allege a statute of limitations defense and in failing to continue the trial for a reasonable time. The Panel further found that "a 50% vocational disability would be more in line with the facts of this case." The Panel ordered that the case be remanded to the trial court to allow GAF to present its statute of limitations defense and for reduction of the disability award should Mr. George prevail upon remand. We granted Mr. George's petition for full Court review pursuant to Tenn. Code Ann. § 50-6-225(e)(5).

## ANALYSIS

### AMENDMENT OF ANSWER

The trial in this case began on Monday, November 20, 1998. GAF first raised the statute of limitations defense in its pretrial brief filed on the preceding Friday, eight months after GAF filed its answer. Before the trial commenced, GAF requested that the pleadings be amended to conform to the proof to be presented. The trial court took the issue under advisement, requested briefing on the issue, and proceeded with a trial on the remaining issues related to Mr. George's disability. In its findings of fact, the trial court found that GAF waived the statute of limitations defense by failing to raise the defense in its answer. GAF filed a motion to amend its answer under Tenn. R. Civ. P. 15 to include the statute of limitations defense. The trial court denied GAF's motion. The Panel reversed the trial court's decision and remanded the case for determination of the statute of limitations issue on its merits. We hold that the trial court did not abuse its discretion in declining to allow GAF to amend its answer.

### Rule 15.02

We first address GAF's initial request that the pleadings be amended to conform to the proof to be presented at trial. Rule 15.02 of the Tennessee Rules of Civil Procedure allows amendment of the pleadings to conform to the evidence presented on any issue tried by express or implied consent. Although we have held that the timing of a motion to conform is inconsequential, Zack Cheek Builders, Inc. v. McLeod, 597 S.W.2d 888, 890 (Tenn. 1980), a motion under Rule 15.02 must by its very nature be filed following presentation of evidence concerning the issue in question. "[T]he real question before us is not whether the amendment was timely made, but whether or not the parties actually tried the issue delineated by the amendment." Zack Cheek Builders, Inc., 597 at 890.

Here, GAF asked that the pleadings be amended to conform to the evidence before any evidence had been presented. Mr. George objected to trial of the statute of limitations issue, and there is no evidence in the record that he later impliedly consented to trial of the issue. Mere

---

[1](...continued)

GAF was aware of the noise level in its Nashville plant, provided hearing tests for its employees, and received copies of the test results. Moreover, GAF sent Mr. George to a hearing specialist in 1992. We agree with the Panel's assessment that GAF had as much notice of Mr. George's hearing loss as he had.

introduction into evidence of the relevant dates surrounding Mr. George's injury does not amount to trial of the statute of limitations defense by implied consent. That evidence was used to establish a connection between Mr. George's hearing loss and his employment with GAF. The trial court did not err when it declined to grant GAF's pre-trial motion to conform.

## Rule 15.01

We next address the trial court's denial of GAF's post-trial motion to amend its answer. Rule 15.01 of the Tennessee Rules of Civil Procedure provides that a party may amend a pleading to which no responsive pleading is permitted within 15 days after it is served if the action has not been set for trial. Tenn. R. Civ. P. 15.01. "Otherwise a party may amend the party's pleadings only by written consent of the adverse party or by leave of the court; and leave shall be freely given when justice so requires." Id. We have maintained that the determination of whether to allow an amendment to the pleadings is left to the sound discretion of the trial court. Harris v. St. Mary's Med. Ctr., Inc., 726 S.W.2d 902, 904 (Tenn. 1987). "Amended pleadings may be filed before trial, after trial, or even after appeal so long as the trial court has jurisdiction and so long as the trial court does not abuse its discretion in allowing the amendment." Id.

Rule 8.03 of the Tennessee Rules of Civil Procedure requires that a statute of limitations defense be specifically pleaded. See also Sands v. State, 903 S.W.2d 297, 299 (Tenn. 1995); Travelers Ins. Co. v. Austin, 521 S.W.2d 783, 785 (Tenn. 1975). Generally, failure to do so results in a waiver of the defense. Tenn. R. Civ. P. 12.08 ; see also Denny v. Webb, 199 Tenn. 39, 44-45, 281 S.W.2d 698, 701 (1955); Steed Realty v. Oveisi, 823 S.W.2d 195, 197 (Tenn. Ct. App. 1991). It is well settled, however, that if the opposing party is given fair notice of the defense and an opportunity to rebut it, failure to specifically plead a statute of limitations defense will not result in a waiver. Sands, 903 S.W.2d at 299. "In other words, the purpose of the specific pleading requirement is to prevent a party from raising a defense at the last possible moment and thereby prejudicing the opposing party's opportunity to rebut the defense." Id. It is within the trial court's discretion to decide whether to allow a party to file a statute of limitations plea after the trial has begun. Steed Realty, 823 S.W.2d at 197.

In Gardiner v. Word, 731 S.W.2d 889 (Tenn. 1987), we listed the following nonexclusive set of factors for a trial court to consider when deciding whether to grant a motion to amend: "undue delay in filing the amendment, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and the futility of the amendment." Id. at 891-92. In this case, GAF raised its statute of limitations defense at the last possible moment, essentially the night before trial. GAF's articulated reason for delay in requesting the amendment was that it was previously unaware of an unreported Special Workers' Compensation Appeals Panel opinion concerning the statute of limitations defense in

hearing loss cases.[2]  The record does not reflect that the Panel decision represented a new development in the law.  Based upon our review of the record, it appears that GAF's delay in raising its statute of limitations defense was not justified.

Had GAF been allowed to address the defense at trial, Mr. George would have been denied a sufficient opportunity to rebut the defense.  The parties had set the trial date by agreement.  Rule 27.03 of the Davidson County Local Rules of Practice states, "When a case is set by agreement . . . all counsel are certifying they are available for trial and that the case will be in all respects ready for trial on the trial date."  Moreover, Rule 27.05(a) of the local rules provides that a case "will not be continued except for good cause which shall be brought to the attention of the court as soon as practicable before the date of the trial."  Mr. George should not have been forced to accept a continuance to meet a last-minute statute of limitations defense raised by GAF.

The specific pleading requirements of Tenn. R. Civ. P. 8.03 are designed to prevent trial by ambush in situations like the one at hand.  Under these circumstances, justice did not require allowing amendment of the pleadings under Rule 15.01.[3]  We therefore hold that the trial court acted within its discretion in denying GAF's motion to amend its answer after trial to include a statute of limitations defense.

## VOCATIONAL DISABILITY RATING

The Panel reduced the trial court's permanent partial disability award from 90% to 50%.  The Panel pointed to Dr. Cate's diagnosis of an 8.4% hearing loss on November 14, 1997, and Dr. Haynes' diagnosis of a 17% hearing loss on May 7, 1998.  The Panel also noted that Mr. George is able to hear in environments without high levels of background noise away from industrial settings and that Mr. George's hearing impairment did not interfere with his job performance or cause him to miss any time from work.

"The extent of vocational disability is a question of fact to be determined from all the evidence, including lay and expert testimony."  Nelson v. Wal-Mart Stores, Inc., 8 S.W.3d 625, 629 (Tenn. 1999).  Anatomical impairment is a distinct finding from vocational disability and is but one factor to be considered in determining the extent of vocational disability. Cleek v. Wal-Mart Stores, Inc., 19 S.W.3d 770, 774 (Tenn. 2000); Story v. Legion Ins. Co., 3 S.W.3d 450, 456 (Tenn. Sp. Workers Comp. 1999).  That an injured worker has not missed work does not preclude an award of workers compensation benefits. Story, 3 S.W.3d at 454.  "[A] vocational impairment is measured not by whether the employee can return to her former job, but whether she has suffered a decrease in her ability to earn a living."  Id. at 456.  In determining the extent of vocational disability, the trial

---

[2]Austein v. Riverwood Int'l USA, Inc., No. 02S01-9704-CH-0037, 1998 WL 142131 (Tenn. Sp. Workers Comp. Mar. 30, 1998) (holding that the receipt of hearing test results imposed a duty upon the plaintiff to use due diligence to determine the nature and extent of his hearing loss and whether it was work related).

[3]GAF's inclusion of language in its answer purporting to reserve the right to allege additional defenses after a more complete investigation had no legal effect and affords GAF no relief.

court should consider the employee's age, education, job skills and training, the extent and duration of anatomical impairment, local job opportunities, and the employee's capacity to work at the types of employment available considering the employee's disabled condition.  Id.; Cleek, 19 S.W.3d at 774; McIlvain v. Russell Stover Candies, Inc., 996 S.W.2d 179, 183 (Tenn. 1999).  The trial court's determination of the extent of vocational disability is reviewed "de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise."  Tenn. R. App. P. 13(d); see also Nelson, 8 S.W.3d at 629.

The trial court in this case properly considered the above-outlined factors in making its disability award.  The court based its determination of 90% permanent partial disability on the medical testimony of Drs. Cate and Haynes, including their assignment of anatomical impairment, and Mr. George's "advancing age, limited education, length of time at one job, and lack of broad based skills."  Mr. George was sixty-two years old at the time of trial.  He had worked in the same industrial setting for thirty-eight years.  There is no evidence in the record showing that Mr. George had other education, skills, or training that would enable him to work in a different environment.  His capacity to work in an industrial setting has decreased due to hearing loss connected with his work environment.  Based upon our review of the record, we do not find that the evidence preponderates against the trial court's finding of 90% permanent partial disability in this case.  We therefore reject the Panel's recommendation and reinstate the trial court's judgment awarding Mr. George benefits based upon 90% permanent partial disability to both ears.

## CONCLUSION

Because GAF failed to timely raise its statute of limitations defense, we hold that the trial court did not abuse its discretion in refusing to allow GAF to amend its answer to include the defense.  Moreover, the evidence does not preponderate against the trial court's award of 90% permanent partial disability to both ears.  Accordingly, we reject the recommendation of the Special Workers' Compensation Appeals Panel and affirm the trial court's judgment in all respects.  Costs of this appeal are taxed to the appellants, Building Materials Corporation of America d/b/a GAF Materials Corporation and Zurich American Insurance Company, for which execution may issue if necessary.

_____
JANICE M. HOLDER, JUSTICE