IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 12, 2020 Session

## TIFFANY C. ROBY v. NATIONSTAR MORTGAGE, LLC, ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-001283-16  Mary L. Wagner, Judge**
_____

### No. W2019-00730-COA-R3-CV
_____

This appeal stems from a dispute involving real property that Plaintiff acquired online. The property was previously purchased in a foreclosure action by one of the defendants. The previous owners were holdover occupants of the property.  After purchasing the property, Plaintiff signed a real estate purchase contract and closed approximately two and one-half months thereafter.  Due to delays in litigation involving the holdover occupants, Plaintiff was unable to take possession of the property for nearly two years after purchasing it online.  In this case, Plaintiff brought suit against NationStar Mortgage, LLC; U.S. Bank, N.A.; Auction.com, LLC; and WFG National Title Insurance Company on several contract-related claims and alleged violations of the Tennessee Consumer Protection Act.  Auction.com and WFG were dismissed prior to trial.  The remaining defendants moved for summary judgment on all of the claims, which the trial court granted in part and denied in part.  A jury trial was held on the remaining claims. At the close of Plaintiff's proof at trial, the defendants moved for a directed verdict, which the court again granted in part and denied in part.  One claim under the Tennessee Consumer Protection Act went to the jury, which found in favor of Plaintiff and awarded a verdict of $250,000.  The parties filed separate post-trial motions.  The trial court granted the defendants' motion for judgment notwithstanding the verdict and denied the other requests of the parties or found them to be moot.  For the reasons stated herein, we affirm the decisions of the trial court and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded.**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY W. ARMSTRONG, J., joined.

Kevin A. Snider, Germantown, Tennessee, for the appellant, Tiffany C. Roby.

Leo Bearman, Jr. and Walter Preston Battle IV, Memphis, Tennessee, and Lauren Paxton Roberts, Nashville, Tennessee, for the appellees, NationStar Mortgage, LLC, and U.S. Bank, N.A.

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

The disputes in this case stem from the purchase of real property by Tiffany C. Roby ("Plaintiff") from U.S. Bank, N.A., as Trustee for the Holder of the Specialty Underwriting and Residential Finance Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-BC2 ("U.S. Bank") and NationStar Mortgage, LLC ("NationStar") (collectively "Defendants"). Plaintiff is a resident of Shelby County. She holds a Master's Degree in business administration and is employed by Federal Express providing analysis on the company's finances and investments. U.S. Bank is a national bank conducting business in Shelby County, Tennessee. NationStar is a Delaware limited liability company conducting business in Shelby County, Tennessee.

The subject real property is a single-family home located at 8804 Brunswick Farms Drive, Arlington, Tennessee ("the Property"). Former owners Alfonzia B. Biles and wife, Tonya D. Biles failed to make mortgage payments on the Property, and on October 30, 2014, U.S. Bank purchased the Property in a foreclosure sale. After the foreclosure sale, Defendants listed the Property online at Auction.com. Plaintiff became aware of the online sale in November 2014. She was aware that the property had been foreclosed on and did not see inside of the home before submitting a bid. Subsequently, Plaintiff "won" the online bid for the Property. On December 5, 2014, Plaintiff executed a purchase and sale agreement ("the Agreement") for the Property with NationStar. The Agreement included a Real Estate Owned Disclosure ("REO Disclosure") and an Occupied Property Addendum, both of which included terms that limited Defendants' liability.[1]

There is much debate as to when Plaintiff became aware of certain facts regarding the Property, but she does not dispute the language of the Agreement.[2] The terms relevant to this appeal are as follows:

> Property Condition and Attributes. Except for any representations and warranties of Seller expressly set forth in this Agreement or in written disclosures to Buyer executed by Seller, *Seller does not make, and*

---

[1] We will also refer to all of these documents collectively as "the Agreement."

[2] Although Plaintiff does not dispute the language of the Agreement, she argues many of its terms were induced through fraudulent misrepresentations by Defendants.

- 2 -

*expressly disclaims, any representation or warranty, express or implied, regarding the Property.*

. . . .

Counterparts, Electronic Signatures, and Complete Agreement. . . . *This Agreement constitutes the entire agreement of the parties hereto* with respect to the subject matter hereof and shall supersede and take the place of any other instruments purporting to be an agreement of the parties hereto relating to the subject matter thereof.

. . . .

OCCUPIED PROPERTY.  Seller makes no representations or warranties as to whether the Property is occupied as of the Close of Escrow.

(1) If the Property is occupied, *Seller will endeavor (but shall not be obligated)* to evict or remove the occupants prior to the Close of Escrow.  Buyer expressly waives any right to cancel this Agreement based on the status of occupancy of the Property.

. . . .

Occupancy Status of Property. . . . *Buyer acknowledges that neither the Seller nor its representatives, auctioneer, brokers, agents or assigns has made any warranties or representations, implied or express, relating to the existence or nonexistence of any Occupants or Claimants at the Property other than advising Buyer that the Property may have Occupants* or Claimants in possession of the Property or claiming the right to occupy or use the Property or any portion thereof.  At Closing, Buyer will assume all responsibility and liability for or with respect to any Occupants or Claimants of the Property.

. . . .

Eviction Proceedings; Relocation Costs.  Seller or its agents may have commenced unlawful detainer, eviction or similar proceedings against Occupants or Claimants of the Property.  Buyer understands and acknowledges that Seller will not provide any case numbers, current disposition of any eviction proceedings, nor contact information for Seller's attorney. . . . Seller will make reasonable efforts to file within twenty (20) business days after the Closing of the transaction contemplated hereby, papers in any such proceeding seeking to cause the dismissal of such proceeding without prejudice, and, in any event, already has or will cease

all efforts and actions to continue or complete any such proceedings. After Closing, Buyer may elect to bring, at his/her/its sole cost and risk, such unlawful detainer, eviction, or similar proceedings as Buyer may desire. . . . *Under no circumstances shall Seller be responsible for evicting, removing or relocating any Occupants* or Claimants or removing any personal property at the Property or for reimbursing Buyer for any such costs incurred by Buyer.

> . . . .

> Buyer's Expenses. Notwithstanding state or local custom, ALL COSTS, TRANSACTION MANAGEMENT, TRANSFER, DOCUMENTATION AND OTHER FEES, EXPENSES, TAXES, . . . AND ALL OTHER FINANCIAL PAYMENT TO BE MADE IN CONNECTION WITH THE PURCHASE AND SALE OF THE PROPERTY . . . WHETHER PAST DUE, CURRENTLY DUE OR DELINQUENT, . . . SHALL . . . BE BORNE AND PAID BY THE BUYER, . . . these items shall include, but are not limited to, transaction management fees, all current, past due and delinquent property taxes, . . . title insurance, title insurance charges, . . . and . . . real property transfer taxes or deed tax . . . .

(Emphasis added). The terms of the Agreement were available on Auction.com under the Property's listed webpage prior to Plaintiff placing her bid. Plaintiff indicated she either reviewed or had access to the Agreement on the webpage prior to bidding. Additionally, Plaintiff had access to her buyer-specific Agreement prior to her executing it.

The day before entering into the Agreement, Plaintiff took part in a telephone call with a representative of Auction.com to discuss many of its terms.[3] During the call, Plaintiff affirmed she was aware that the Property may be occupied and that she would be responsible for any eviction proceedings after closing. Plaintiff eventually closed on the Property on February 13, 2015. Shortly thereafter, a special warranty deed conveying the Property to Plaintiff was recorded. The total purchase price for the Property was $189,000.

Prior to Plaintiff bidding on the Property, she spoke with Ken Tate, Defendants' real estate agent, via telephone. Plaintiff claims that Mr. Tate assured her that, although there were individuals still living in the Property, Defendants were working to remove them from the Property. After speaking with Mr. Tate, Plaintiff registered for an account on Auction.com and placed her winning bid for the Property. On December 30, 2014, U.S. Bank filed a Forcible Entry and Detainer Action ("FED action") against the Biles as the holdover occupants. Defendants' claims against the Biles were dismissed on August

---

[3] A recording of the phone call was played at trial on October 9, 2018.

14, 2015, but counterclaims by the Biles were not dismissed until July 5, 2016.[4]

Six days after closing on the Property, Plaintiff filed her own FED action against the Biles.[5] The trial for Plaintiff's FED action took place on March 11, 2015. At the trial, Plaintiff was made aware of Defendants' FED action. On January 14, 2016, Plaintiff emailed Scott Ellerbee, Vice-President of Customer Relations for NationStar. In the email, Plaintiff described her recent troubles and asked, "Do you know if there is any update available yet or if there is anything else I need to do?" The entirety of Mr. Ellerbee's response reads, "Tiffany, I just received an update from our legal department. Apparently negotiations are going very slowly between our attorney and their attorney. We are pushing for a resolution as quickly as possible. At this point, there is nothing for you to do and I'll keep checking on the status." Eventually, Plaintiff was successful in her FED action. After several appeals by the Biles, Plaintiff took possession of the Property in October 2016, nearly two years after executing the Agreement. Plaintiff claims the delay in obtaining possession of the Property, her FED action against the Biles, and Defendants' actions caused her damages.

Plaintiff brought suit against Defendants on March 29, 2016, seeking rescission of the Agreement, damages, and attorney's fees.[6] Plaintiff asserted several claims, including breach of contract and/or warranty; breach of the implied covenant of good faith and fair dealing; fraud and/or misrepresentation; violations of the Tennessee Consumer Protection Act ("TCPA"); and sought recovery for any other intentional, reckless, or negligent actions by Defendants. Defendants answered jointly on August 25, 2016. On October 16, 2017, Defendants filed a motion for summary judgment on all of Plaintiff's claims. The trial court granted the motion in part and denied it in part. The court found the plain language of the Agreement controlled Plaintiff's breach of contract and fraud or misrepresentation claims, and that the parol evidence relied upon by Plaintiff could not vary its terms. It also concluded that a claim for breach of good faith and fair dealing could not proceed without a breach of contract claim. Accordingly, the court awarded summary judgment on these three claims. The court also found that the only duties owed to Plaintiff were stated in the Agreement, and it therefore granted summary judgment on Plaintiff's "catchall" negligence claim. Lastly, the court found many of the facts relied upon for Plaintiff's TCPA claims were undisputed and barred by the TCPA's one-year statute of limitations. As a result, the court granted summary judgment on eight of Plaintiff's TCPA claims. The court denied summary judgment for the three remaining TCPA claims, which pertained to alleged representations made by Defendants regarding

---

[4] Pursuant to Rules 41.01 and 41.03, the Biles voluntarily dismissed their claims against U.S. Bank, and since these were the only remaining claims in the matter, the case was dismissed without prejudice.

[5] Anticipating the need to remove the Biles after closing, Plaintiff retained counsel for her FED action in January 2015.

[6] Plaintiff also included Auction.com and WFG National Title Insurance Company in her complaint. These parties were dismissed prior to trial.

Plaintiff's rights and remedies, Defendants' failure to take timely possession of the Property, and Defendants' failure to inform Plaintiff of back taxes owed on the Property. In doing so, the court found there was no evidence regarding the timing of these actions to determine if they were also time-barred.[7]

A jury trial on the remaining TCPA claims took place on October 8–9, 2018. Initially, Plaintiff testified on many of the above-referenced facts and then called two additional witnesses. Jay Bailey, Chief Administrator for the Assessor of Property for Shelby County, testified on the taxes owed on the Property at various times. Brandon McNary, Plaintiff's counsel for her FED action, testified on the facts related to her FED action and expenses incurred as a result. Mr. McNary reaffirmed that no later than March 11, 2015, Plaintiff was made aware of the identity of the Property's occupants and Defendants' FED action against them. At the close of Plaintiff's proof, Defendants moved for a directed verdict on the three remaining claims.

For Plaintiff's TCPA claim for taxes due on the Property, the trial court found there were no representations made with regard to the taxes other than those found in the Agreement, which details Plaintiff's responsibility to pay them. As a result, the court granted Defendants' motion for directed verdict on the taxes claim. Plaintiff's remaining TCPA claims broke down into three separate alleged actions of Defendants: (1) not disclosing that the Property was occupied by the Biles as previous owners that were foreclosed on; (2) not disclosing that they had filed their own FED action against the Biles in December 2014; and (3) stating that they were going to "take care of" the issue regarding the occupants without Plaintiff needing to take further action. The trial court found the undisputed facts showed that Plaintiff was made aware of the first two facts no later than March 11, 2015, at the trial for her FED action. Because Plaintiff filed her cause of action in the present case on March 29, 2016, the court found any TCPA claims based on the first two facts were barred by the one-year statute of limitations. Thus, it granted Defendants' motion for a directed verdict for these claims.

The sole remaining claim involved Defendants' statement that they would "take care of" the occupants and subsequent failure to do so. There was no proof put on by Plaintiff regarding the condition or quality of the home itself within the meaning of Tennessee Code Annotated § 47-18-104(b)(5) and (b)(7). Therefore, the court allowed the claim to proceed only under subsection (b)(12), as an allegedly deceptive act that conferred certain rights or remedies to Plaintiff. The court denied Defendants' motion for a directed verdict on this issue. The trial court entered a written order on Defendants' motion for a directed verdict on February 7, 2019, granting it in part and denying it in part.[8] In their case-in-chief, Defendants called only one witness, Logan Zastrow from

---

[7] The court also found Plaintiff's request for rescission of the Agreement to be moot since it was no longer sought.

[8] After the oral arguments on the initial motion for a directed verdict, Plaintiff argued the statute

Auction.com, who testified regarding the circumstances of the Agreement.

After the trial court denied Defendants' renewed motion for a directed verdict and Plaintiff's motion for a directed verdict, the case was submitted to the jury. The jury found that Defendants did commit unfair or deceptive practices in violation of the TCPA and awarded Plaintiff $250,000 in damages. Subsequently, Plaintiff filed a "Motion to Alter or Amend Judgment and/or Add Treble Damages, Attorney Fees, and Discretionary Costs" under the TCPA. Defendants filed a "Motion for Judgment Notwithstanding the Verdict, or Alternatively, Motion for a New Trial or, Alternatively, Motion for Remittitur of Jury Verdict." Oral argument was heard on both motions on February 7, 2019.

The trial court found that any parol evidence offered by Plaintiff regarding Defendants "taking care" of the occupants could not vary the unambiguous terms of the Agreement, which clearly set forth Plaintiff's rights and remedies related to the Property. Finding the Agreement to be clear, the court stated "[t]here is simply no evidence of a deceptive act, as defined in [Tennessee Code Annotated] § 47-18-104(b)(12), by Defendants in the transaction that would indicate that the transaction conferred rights, remedies or obligations that Defendants would 'take care' of removing the occupants." It further found that no reasonable juror could find a violation of the TCPA under these facts and granted Defendants' Motion for Judgment Notwithstanding the Verdict, found Defendants' remaining motion to be moot, and denied Plaintiff's motion. Plaintiff timely appealed to this court on several grounds.

## II. ISSUES PRESENTED

Plaintiff asserts three issues on appeal.

1. Whether the jury verdict must be re-instated because the trial court erred in granting a post-trial motion for judgment notwithstanding the verdict;

2. Whether trial court erred by denying Ms. Roby's motion to alter or amend judgment and/or add treble damages, attorney fees, and discretionary costs; and

3. In the alternative, whether a new trial must be granted because the trial court erred in granting partial summary judgment and/or directed verdict.

In responding to Plaintiff's appeal, Defendants add the following issues, which we have reworded.

---

of limitations defense had been waived since it was not listed in Defendants' answer or an amended answer. Plaintiff did not raise this issue of waiver at the summary judgment phase and asserted it as the trial judge was stepping to the bench to rule on the motion for directed verdict. The court found the defense had not been waived since it had been argued and briefed extensively at the summary judgment phase and that "If [Defendants'] pleadings need to be amended, they will so be amended."

1. Whether all of Plaintiff's claims under the TCPA are barred by the applicable one-year statute of limitations; and

2. Whether the trial court rightly exercised her discretion to permit amendment of Defendants' pleadings to assert a statute of limitations defense.

For the reasons stated herein, the decisions of the circuit court are affirmed and remanded.

### III.    STANDARD OF REVIEW

A trial court's ruling on a motion for summary judgment is reviewed de novo. *Beard v. Branson*, 528 S.W.3d 487, 494 (Tenn. 2017). Rule 56.04 states summary judgment is appropriate in a case "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. When a party does not bear the burden of proof at trial, it can satisfy its burden of production at the summary judgment phase "either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis*, 477 S.W.3d 235, 264 (Tenn. 2015). In response, the nonmoving party must present "specific facts in the record which could lead a rational trier of fact to find in [its] favor." *Id.* at 265. *See also TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 889 (Tenn. 2019).

On a motion for a directed verdict, a trial court's grant or denial is also reviewed de novo. *Biscan v. Brown*, 160 S.W.3d 462, 470 (Tenn. 2005). In deciding a motion for a directed verdict, an appellate court applies the same standard as a trial court. *See Id.*; *Mairose v. Fed. Express Corp.*, 86 S.W.3d 502, 511 (Tenn. Ct. App. 2001). As explained by our supreme court:

> A directed verdict is appropriate only when the evidence is susceptible to but one conclusion. We must "take the strongest legitimate view of the evidence favoring the opponent of the motion when called upon to determine whether a trial court should have granted a directed verdict." In addition, all reasonable inferences in favor of the opponent of the motion must be allowed and all evidence contrary to the opponent's position must be disregarded.

*Alexander v. Armentrout*, 24 S.W.3d 267, 271 (Tenn. 2000) (citations omitted) (quoting *Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn. 1994)). In appeals from a trial court's

decision on a directed verdict, this court does not weigh evidence or determine the credibility of witnesses. *Johnson v. Tenn. Farmers Mut. Ins. Co.*, 205 S.W.3d 365, 370 (Tenn. 2006); *Island Properties Assocs. v. Reaves Firm, Inc.*, 413 S.W.3d 392, 397 (Tenn. Ct. App. 2013).

The standard of review for a motion for a directed verdict is the same as a motion for judgment notwithstanding the verdict. *Island Properties Assocs.*, 413 S.W.3d at 397 (citing *Holmes v. Wilson*, 551 S.W.2d 682, 685 (Tenn. 1977)); *Filson v. Wells Fargo Home Mortg., Inc.*, No. M2007-01842-COA-R3-CV, 2008 WL 3914899, at *5 (Tenn. Ct. App. Aug. 25, 2008). A party who moved for a directed verdict at the close of evidence may move for a judgment notwithstanding the verdict within 30 days after the jury is discharged. Tenn. R. Civ. P. 50.02; *Mairose*, 86 S.W.3d at 510–11.

## IV. DISCUSSION

We note at the outset that the trial court was presented with several procedural issues at various times in this case. Many of those issues overlap in both their facts and analysis. Herein, we address those issues as they were presented to the trial court, chronologically.

### A. Summary Judgment

The majority of Plaintiff's claims were dismissed at the summary judgment phase. Initially, Defendants' motion for summary judgment relied solely on the parol evidence rule and the Statute of Frauds as bars to extrinsic evidence. At the court's request, the parties submitted supplemental briefs on the issue of summary judgment. It was in the supplemental briefs that Defendants raised the statute of limitations defense to Plaintiff's claims. The trial court granted Defendants partial summary judgment on various grounds. The contract-related claims were dismissed based on the plain terms of the Agreement; whereas, many of the TCPA claims were dismissed based on the applicable statute of limitations.

If the terms of a valid contract are "clear and unambiguous, the literal meaning of the language controls the outcome of contract disputes." *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002). In such instances, parol evidence is not admissible to vary or contradict the plain terms of a contract. *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tenn., Inc.*, 566 S.W.3d 671, 694–95 (Tenn. 2019); *Smith v. Hi-Speed, Inc.*, 536 S.W.3d 458, 470 (Tenn. Ct. App. 2016); *Lyons v. Farmers Ins. Exchange*, 26 S.W.3d 888, 892 (Tenn. Ct. App. 2000). Parol evidence may only be included when it supplements a term in an incomplete contract or clarifies an ambiguous term. *Individual Healthcare Specialists, Inc.*, 566 S.W.3d at 696.

However, a contract may contain an integration clause, which "indicates the parties' intent that the contract[] embod[ies] their complete and exclusive agreement." *Id.* at 697. In such instances, the parol evidence rule is "most restrictive when the contract . . . is intended to be the complete and exclusive statement of the parties' agreement." *Id.* at 696. When a contract is fully integrated, it may not be supplemented or contradicted by additional terms, regardless of whether those terms are consistent or inconsistent. *Id.* at 696–97. Despite its name, the parol evidence rule is one of substantive law that is meant to preserve the integrity of a written contract. *Smith*, 536 S.W.3d at 470; *Lyons*, 26 S.W.3d at 892. One of the exceptions to this rule is when a party seeks to introduce extrinsic evidence in an effort to show fraud or mistake in the contract. *See, e.g.*, *Lipford v. First Family Fin. Servs., Inc.*, No. W2003-01208-COA-R3-CV, 2004 WL 948645, at *3 (Tenn. Ct. App. Apr. 29, 2004).

In this case, among other claims, Plaintiff sued for breach of contract and/or warranty and breach of implied covenant of good faith and fair dealing. We agree with the trial court that the breach of contract claim must fail based on the unambiguous terms of the Agreement. Despite any representations that Defendants allegedly made, the Agreement is clear. It expressly states that the seller (Defendants) did not make any representations or warranties regarding the occupancy status of the Property other than those stated in the agreement. In fact, the Agreement states that the Property may have occupants that assert a claim to the Property.

Further, the Agreement states that Plaintiff would be responsible for any eviction proceedings that may be necessary after closing. Defendants had the option to file an eviction action against the Biles, but they were not required to do so. The Agreement reads, "If the Property is occupied, Seller will endeavor *(but shall not be obligated)* to evict or remove the occupants prior to the [c]lose of [e]scrow." (Emphasis added). Defendants complied with these terms. More than a month before closing, U.S. Bank filed its FED action against the Biles. While this action resulted in prolonged litigation, that delay was not due to Defendants' actions, nor were they obligated to be successful in the suit. The case continued, in large part, due to the Biles' counterclaims and appeals, over which Defendants had no control. Finally, in several places the Agreement states Plaintiff would pay cash to purchase the Property rather than it being a financed sale. On these facts, a breach of contract claim cannot stand.

Plaintiff fatally relies on parol evidence to support her breach of contract and/or warranties claim. Statements made by Mr. Tate, Mr. Ellerbee, or other representatives of Defendants were not part of the Agreement. The Agreement has an unambiguous integration clause, which states that it "constitutes the entire agreement of the parties hereto with respect to the subject matter hereof," thereby indicating that the Agreement is sole and complete. As a result, prior or contemporaneous statements regarding any warranties, occupancy, or financing of the Property are not part of the Agreement. *See Individual Healthcare Specialists, Inc.*, 566 S.W.3d at 696–97; *Smith*, 536 S.W.3d at 470;

*Lyons*, 26 S.W.3d at 892. Instead, the unambiguous terms of the Agreement control, and their plain meaning will be given effect. *Individual Healthcare Specialists, Inc.*, 566 S.W.3d at 696–97; *Lyon*, 26 S.W.3d at 892. Accordingly, we affirm the trial court's decision to grant summary judgment on Plaintiff's breach of contract and/or warranties claim. Without parol evidence, Plaintiff cannot point to terms in the Agreement that would lead a factfinder to find a breach of contract. *See TWB Architects, Inc.*, 578 S.W.3d at 889; *Rye*, 477 S.W.3d at 264. Similarly, Plaintiff's independent claim for "other intentional or negligent actions" was rightfully dismissed. The only duties owed to Plaintiff by Defendants are found in the Agreement. Therefore, this "catchall" claim is without merit.

In the absence of a breach of contract claim, Plaintiff's breach of implied covenant of good faith and fair dealing must also fail. It is true that Tennessee courts imply a duty of good faith to the enforcement and performance of contracts. *See Dick Broad. Co. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 660–61 (Tenn. 2013); *Wallace Nat'l Bank of Comm.*, 938 S.W.2d 684, 686 (Tenn. 1996). This duty has two parts: (1) it ensures the parties' reasonable expectations are honored, and (2) it protects their rights to receive the benefits of the agreement. *Barnes & Robinson Co. v. Onesource Facility Servs., Inc.*, 195 S.W.3d 637, 642–43 (Tenn. Ct. App. 2006). However, a claim for a breach of this implied duty "is not a stand-alone claim; rather, it is part of an overall breach of contract claim." *Jones v. LeMoyne-Owen Coll.*, 308 S.W.3d 894, 907 (Tenn. Ct. App. 2009) (citing *Lyons*, 26 S.W.3d at 894). Accordingly, in the absence of her breach of contract claim, the trial court rightfully dismissed Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

As we previously noted, fraud may be an exception permitting the introduction of parol evidence. *See Lipford*, 2004 WL 948645, at *3. Nevertheless, such evidence cannot vary the terms of an express contract; it may only be introduced to show alleged fraud or mistake. *Id.* Further, parol evidence may be presented for separate claims of fraudulent misrepresentation or fraudulent inducement. *Butler v. Butler*, No. W2007-01257-COA-R3-CV, 2008 WL 5396019, at *6–7 (Tenn. Ct. App. Dec. 23, 2008); *Lipford*, 2004 WL 948645, at *4 (citing *Brungard v. Caprice Records*, 608 S.W.2d 585, 588 (Tenn. Ct. App. 1995)). Therefore, in this case, parol evidence in support of Plaintiff's separate claims for fraud or misrepresentation in the Agreement would be permitted. Yet, the facts show that Defendants are not liable under these theories.

To prove fraudulent inducement or fraud in tort, a plaintiff must show "a false statement concerning a fact material to the transaction." *Lowe v. Gulf Coast Dev., Inc.*, 01-A-019010CH00374, 1991 WL 220576, at *7 (Tenn. Ct. App. Nov. 1, 1991) (stating the elements for fraudulent inducement "are essentially the same as those required in an action for fraud") (citing *Stacks v. Sunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990)). Here, any alleged statements made prior to the Agreement were either true or clarified for Plaintiff. *Prior to* signing the Agreement, Plaintiff spoke with a representative from

Auction.com who solidified Plaintiff's understandings of the Property. During this discussion, Plaintiff indicated she was aware that the Property may be occupied. She also affirmed she would be responsible for any necessary eviction actions after closing. Plaintiff acknowledges that she either reviewed the terms of the Agreement or had access to them prior to signing. The Agreement itself clarifies and controls Plaintiff's rights and duties. "If one who is in *possession of all material facts*, either actually or constructively, proceeds with a purchase of realty, notwithstanding such knowledge, such a person cannot thereafter recover on the basis of fraud, misrepresentation, or concealment of the information to which all parties had equal access." *Land v. Dixon*, No. E2004-03019-COA-R3-CV, 2005 WL 1618743, at *4 (Tenn. Ct. App. July 12, 2005) (quoting *Winstead v. First Tenn. Bank N.A., Memphis*, 709 S.W.2d 627, 633 (Tenn. Ct. App. 1986)). Without a misstatement of material facts by Defendants, and with Plaintiff having access to the essential terms, her claim for fraud and/or misrepresentation must fail.[9]

The last claims the trial court dismissed at the summary judgment phase were several of Plaintiff's TCPA claims. The court granted summary judgment on these claims under the one-year statute of limitations in the TCPA.[10] We agree. However, before discussing it further, we will first address the parties' concerns regarding the amendment to Defendants' answer to include a statute of limitations defense.

Defendants' initial motion for summary judgment and the accompanying memorandum of law did not include a statute of limitations defense. After the trial court requested supplemental briefing on the motion, Defendants' supplemental memorandum included the statute of limitations as a defense in favor of summary judgment. Despite Plaintiff's contentions to the contrary, it was within the trial court's discretion to consider this supplemental argument in making its decision. Trial courts are granted wide discretion in controlling their dockets and deciding whether to extend filing deadlines. *Kenyon v. Handal*, 122 S.W.3d 743, 751 (Tenn. Ct. App. 2003). In this case, we find no abuse of discretion in the court's decision to allow Defendants to raise this additional issue and amend their pleadings.

Below we discuss whether Defendants waived the statute of limitations defense for their later motions. However, for the purpose of summary judgment, a discussion on waiver is unnecessary. Plaintiff did not raise a waiver argument in any of her responses to Defendants' motion for summary judgment. As a result, it will not be considered in our review of the summary judgment ruling. *See Lawrence v. Stanford*, 655 S.W.2d 927,

---

[9] To any extent we give a different analysis than the trial court on these particular claims, the conclusion is the same, so its decision may be affirmed. *See Shutt v. Blount*, 249 S.W.2d 904, 907 (Tenn. 1952) (stating "if the [t]rial [j]udge reached the right result for the wrong reason, there is no reversible error"); *Tolliver v. Tellico Vill. Prop. Owners Ass'n*, 579 S.W.3d 8, 20 (Tenn. Ct. App. 2019).

[10] Tennessee Code Annotated § 47-18-110 states, "Any action commenced pursuant to [the TCPA] shall be brought within one (1) year from a person's discovery of the unlawful practice."

929 (Tenn. 1983) ("It has long been the general rule that questions not raised in the trial court will not be entertained on appeal[.]"). Aside from the arguments that the statute of limitations defense should not have been considered in supplemental briefing and that the defense was waived, Plaintiff asserts no other arguments in her principal appellate brief that pertain to the TCPA claims dismissed on summary judgment. Accordingly, we affirm the trial court's award of summary judgment on these claims.

### B. Directed Verdict

Next, we turn to Defendants' motion for a directed verdict. At the close of Plaintiff's proof, Defendants moved for a directed verdict on the remaining TCPA claims. The trial court granted the motion in part and denied it in part. Plaintiff's TCPA claim for taxes due on the Property was dismissed due to the absence of proof tending to show Defendants made improper representations on the matter.[11] Her claims for failing to disclose the pending FED action and the identity of the occupants were dismissed as being untimely. In closing, the trial court denied Defendants a directed verdict on Plaintiff's TCPA claim that Defendants' promise to "take care" of removing the occupants violated Tennessee Code Annotated § 47-18-104(b)(12) as unfair or deceptive acts "[r]epresent[ing] that a consumer transaction confers or involves rights, remedies, or obligations that it does not have or involve." Again, we affirm the trial court's ruling on these issues.

Again, Plaintiff's principal brief makes no mention of whether the trial court's application of the statute of limitations is appropriate for her claims that were dismissed by the court's directed verdict. Instead, her only argument addressing the claims dismissed by the directed verdict relates to the statute of limitations defense being waived. Her reply brief raises an issue with the trial court's analysis of the statute's application, but that argument cannot be considered by this court. As we have previously stated, a reply brief "is not a vehicle for raising new issues." *Owens v. Owens*, 241 S.W.3d 478, 499 (Tenn. Ct. App. 2007). "It would be fundamentally unfair to permit an appellant to advance new arguments in the reply brief, as appellee may not respond to a reply brief." *Clayton v. Herron*, No. M2014-01497-COA-R3-CV, 2015 WL 757240, at *3 n.1 (Tenn. Ct. App. Feb. 20, 2015) (citing *Denver Area Meat Cutters & Emp'rs Pension Plan v. Clayton*, 209 S.W.3d 584, 594 (Tenn. Ct. App. 2006)). In the absence of a proper argument raising the issue in her principal brief, we will not discuss whether the statute of limitations was applied correctly by the trial court.

In reviewing the record, we find Defendants did not waive their statute of limitations defense. Generally, under Tennessee Rule of Civil Procedure 12.08 a party

---

[11] In her principal brief to this court, Plaintiff's discussion of the directed verdict phase only includes her argument that the statute of limitations defense was waived. She does not speak to her TCPA claim related to the taxes due. Therefore, we find this claim was waived on appeal.

may waive an affirmative defense if it does not include it in its answer or in a responsive pleading. *Pratcher v. Methodist Healthcare Memphis Hosp.*, 407 S.W.3d 727, 735 (Tenn. 2013). However, this rule is not absolute. *See id.* at 735–36; *Sakaan v. FedEx Corp.*, No. W2016-00648-COA-R3-CV, 2016 WL 7396050, at *3–4 (Tenn. Ct. App. Oct. 26, 2016). "[I]f the opposing party is given fair notice of the defense and an opportunity to rebut it," waiver will not result. *George v. Bldg. Materials Corp. of Am.*, 44 S.W.3d 481, 487 (Tenn. 2001) (citing *Sands v. State*, 903 S.W.2d 297, 299 (Tenn. 1995)). The purpose of the pleading and notice requirements are to ensure the opposing party does not suffer trial by ambush. *Id.* at 487; *Sakaan*, 2016 WL 7396050, at *4. Accordingly, a trial court may allow a party to amend its answer under Rule 15.02 to conform to evidence that has been tried by express or implied consent. *George*, 44 S.W.3d at 486. The time allowed to make a motion to amend is determined by the trial court and will not be reversed absent an abuse of discretion. *Pratcher*, 407 S.W.3d at 736; *George*, 44 S.W.3d at 486 (citing *Zach Cheek Builders, Inc. v. McLeod*, 597 S.W.2d 888, 890 (Tenn. 1980)). A trial court has broad authority on this matter. *Pratcher*, 407 S.W.3d at 741. Should the circumstances warrant it, a trial court may allow a party to amend its pleading to conform to an affirmative defense raised, even if trial has already commenced. *George*, 44 S.W.3d at 487.

It should be noted, despite Defendants' summary judgment motion, briefing by both parties, and supplemental briefings on the TCPA's statute of limitations, Plaintiff did not raise her waiver argument until moments before the trial court gave its ruling on Defendants' motion for a directed verdict. While the defense was not included in Defendants' answer or a prior motion to amend, it cannot be said that Plaintiff was the victim of "trial by ambush." *See id.* She was on adequate notice of this issue as a possible defense nearly a year before trial. It is plausible that she even gave her implied consent to the defense being tried at the summary judgment phase by neglecting to object to the defense as being waived. *See id.* at 486. Regardless, under the circumstances, we cannot say the trial court abused its discretion in allowing Defendants to amend their pleadings under Rule 15.02 in order to include the defense. *See Pratcher*, 407 S.W.3d at 741; *George*, 44 S.W.3d at 486.

For the sake of completeness, we will address Plaintiff's argument that the trial court erred in granting Defendants a directed verdict on her claim under section 47-18-104(b)(5). Plaintiff argues that the court incorrectly classified this claim as one relating to an issue with a good (the Property), rather than a service ("taking care of" the occupants.) This section states that a plaintiff may recover if a party "[r]epresent[s] that *goods or services* have . . . characteristics, ingredients, uses, benefits or quantities that they do not have." Tenn. Code Ann. § 47-18-104(b)(5) (emphasis added). Despite Plaintiff's contentions, we need not discuss the trial court's classification of this issue. Plaintiff has not cited to, nor can we locate, a place in the record where she presented any argument regarding alleged violations of this section to the trial court. While her TCPA allegations have been vague and amorphous throughout this case, her brief appears to be

the first time she specifies the applicability of this section as involving a "service" related to the Property. Because she failed to present the argument below, we will not consider it herein. *See Lawrence*, 655 S.W.2d at 929.

### *C. Judgment Notwithstanding the Verdict*

After the trial court's rulings regarding summary judgment and a partial directed verdict, the sole issue remaining for the jury was Plaintiff's TCPA claim under Tennessee Code Annotated section 47-18-104(b)(12). This section defines "unfair or deceptive trade acts of practices" as the action of "[r]epresenting that a consumer transaction confers or involves rights, remedies or obligations that it does not have or involve or which are prohibited by law[.]" Tenn. Code Ann. § 47-18-104(b)(12). The jury found that Defendants had violated the TCPA and found in favor of Plaintiff, awarding her $250,000. Based on the evidence presented, we affirm the trial court's determination that this was not a reasonable finding and agree that Defendants' motion for judgment notwithstanding the verdict should be granted.

Plaintiff points to Mr. Ellerbee's January 14, 2016 email, as well as other statements made by Defendants, to establish her claim under section 47-18-104 (b)(12). In the email, Mr. Ellerbee responds to Plaintiff's frustrations and concerns regarding her inability to occupy the Property and states, "We are pushing for a resolution as quickly as possible. At this point, *there is nothing for you to do* and I'll keep checking on the status." (emphasis added). While ambiguous, this email is surely not a "deceptive act" as defined under the TCPA. To recover under the TCPA, a plaintiff must first prove "that defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA." *Anderson v. Lamb's Auto Serv., Inc.*, No. W2008-01305-COA-R3-CV, 2009 WL 1076729, at *3 (Tenn. Ct. App. Mar. 5, 2009). Evidence of such an act or practice is absent from the record before us.

As we have discussed at length, the Agreement details all of Plaintiff's rights, remedies, and obligations in purchasing the Property. Although Plaintiff may express displeasure with many of the terms therein, they are clear. The Agreement does not make promises that the Property was unoccupied. If it was occupied, Defendants were allowed to institute eviction proceedings, but they were not required to do so. Plaintiff highlights that Defendants failed to dismiss their FED action within 20 days of closing, but that failure was not of Defendants' doing nor was it in violation of the Agreement. The Agreement states, "Seller will make *reasonable efforts* to file within twenty (20) business days after the Closing of the transaction contemplated hereby, papers in any such proceeding seeking to cause the dismissal of such proceeding without prejudice[.]" (Emphasis added). It does not say Defendants would be strictly liable if the FED action continued beyond 20 days. This action extended beyond the allotted time, in large part, due to the Biles' counterclaims and appeals. At the latest, Plaintiff was made aware of this ongoing suit on March 11, 2015. The Agreement also states Plaintiff would be

responsible for any eviction proceedings after closing and that Defendants would not provide any information from its own FED proceeding to aid her. In reading these provisions, and several others, it cannot be said that Defendants engaged in unfair or deceptive acts that conferred "rights, remedies or obligations" that Plaintiff did not have. *See* Tenn. Code Ann. § 47-18-104(b)(12); *Anderson*, 2009 WL 1076729, at *3.

When read in conjunction with the Agreement, Mr. Tate's statements in December 2014, Mr. Ellerbee's email that there was "nothing for [Plaintiff] to do," and any other alleged statements that Defendants would "take care" of the occupancy issue cannot be found to be a violation of the TCPA. Again, the parties may disagree on the meaning and interpretation of these statements, but that alone does not amount to a violation. *See Acuff v. Baker*, No. W2018-00687-COA-R3-CV, 2019 WL 211922, at *20 (Tenn. Ct. App. Jan. 16, 2019). To recover under a section 47-18-104 (b)(12) claim more is required than a disagreement or misunderstanding. For these reasons, we affirm the trial court's decision to grant Defendants' motion for judgment notwithstanding the verdict on Plaintiff's sole remaining claim.

We must recognize Plaintiff's contentions regarding her TCPA claims in light of the Agreement. Plaintiff cites *Hall v. Hamblen*, No. M2002-00562-COA-R3-CV, 2004 WL 1838180, at *4 (Tenn. Ct. App. Aug. 16, 2004), for the proposition that "valid contractual language, duties, rights, and obligations thereunder have no bearing on a TCPA claim." In doing so, Plaintiff argues the trial court erroneously considered the terms in the Agreement when it determined whether the jury verdict should stand. We find this argument unpersuasive.

As explained in *Barrett v. Vann*, No. E2006-01283-COA-R3-CV, 2007 WL 2438025 (Tenn. Ct. App. Aug. 29, 2007), *Hall* stands for the proposition that "a breach of contract claim and a TCPA claim are distinctly different *causes of action*." *Id.* at *18 (emphasis added). Accordingly, recovery can be sought for both causes of action. *Id.* This is not to say relevant evidence for one of the claims cannot be applied to the other; nor does the existence of one claim *per se* establish another. *See Anderson,* 2009 WL 1076729, at *4. Further, it is true that a single contract disclaimer "cannot absolve a seller from liability for [TCPA] violations that led to the contract." *Lein v. Couch*, No. M2002-01625-COA-R3-CV, 2004 WL 343905, at *8 (Tenn. Ct. App. Feb. 23, 2004) (citing *Ganzevoort v. Russell*, 949 S.W.2d 293, 297 (Tenn. 1997); *Mack's Used Cars*, 824 S.W.2d 538, 540 (Tenn. 1992)). However, the facts of this case do not hinge solely on any "as is" clause in the Agreement. As a whole, the Agreement details Plaintiff's rights, remedies, and obligations in relation to the Property. In light of an otherwise valid and unambiguous contract, *Hall* and its progeny do not revive Plaintiff's TCPA claim under section 47-18-104(b)(12).

Based on the foregoing, we hereby find Plaintiff's remaining requests to consider the trial court's decision on treble damages, attorney's fees, and discretionary costs to be

pretermitted. We also decline Plaintiff's request to remand this case with instructions for a new trial on any of Plaintiff's claims.

## V. CONCLUSION

For the reasons stated herein, the circuit court's decisions are affirmed and remanded for further proceedings as may be necessary. Costs of this appeal are taxed to appellant, Tiffany C. Roby, for which execution may issue if necessary.

s/ Carma Dennis McGee
CARMA DENNIS MCGEE, JUDGE
